372 P.2d 832

STATE of New Mexico ex rel. Mildred Dan-
iels ROBERSON, Relator-Appellee
and Cross-Appellant,

v.

BOARD OF EDUCATION OF the CITY OF
SANTA FE, New Mexico, Respondent-
Appellant and Cross-Appellee.

No. 6897.

Supreme Court of New Mexico.

May 18, 1962.

Rehearing Denied July 12, 1962.

Standley & Kegel, Santa Fe, for appel-
lant and cross-appellee.

Charles S. Solomon, John T. Watson,
Santa Fe, for appellee and cross-appellant.

MOISE, Justice.

Respondent, Board of Education of the City of Santa Fe, appeals from a peremptory writ of mandamus in the following words:

"NOW, THEREFORE, you, the said Board of Education of the City of Santa Fe, New Mexico, are hereby commanded to recognize your contract with Relator for the school year of 1960–1961, and to desist from hearings on the question of whether Relator should be reemployed for the school year 1960–1961, and to execute a contract upon the form approved by the New Mexico State Board of Education not later than 10 days before the opening of the next school term to-writ, on or before August 14, 1960."

issued after hearing on the petition of relator-appellee.

Relator was a teacher in the school system of Santa Fe and had been so employed for more than twenty years and had more than sufficient time to have "tenure" rights under the provisions of § 73–12–13, N.M.S.A.1953, Pocket Supp.

On March 11, 1960, respondent delivered a letter to relator notifying her of her reemployment for the 1960–1961 school year, and requested that her acceptance be evidenced by return of the original copy of the letter duly signed by her, within fifteen days after the close of school on May 27, 1960.

The relator signed and returned the letter on May 11, 1960, and on May 17, 1960, respondent acknowledged receipt of relator's acceptance.

Thereafter, on May 26, 1960, being the day before the close of school, relator received a notice which stated that respondent had rescinded its previous actions with respect to relator's 1960–1961 contract, and that she was dismissed from her teaching position upon completion of her 1959–1960 contract. The notice stated that the causes for her dismissal were "(a) insubordination, (b) conduct unbecoming a teacher, (c) disloyalty, (d) improper teaching practices, (e) violation of the code of professional ethics of the National Educational Association," and advised of the time and place that a hearing would be held on the matter. In addition, the notice advised that at the same time and place a hearing would also be held upon the question of relator's "discharge from any contractual obligation" with respondent for the 1960–1961 school year, and stated that by providing for the hearing respondent was not passing on whether a valid contract did or did not exist.

On June 6, 1960, pursuant to the notice, a meeting was held at which relator was present. However, before the hearing was completed it was recessed and relator thereupon sought and obtained an alternative writ of mandamus preventing further pro·

ceedings on whether relator should be reemployed for the school year 1960–1961 pending determination of the issues presented in relator's petition. The peremptory writ quoted supra was issued after final hearing.

Respondent presents for determination here the question of whether it had a right to hold hearings on the question of relator's discharge or dismissal which could not be prohibited by mandamus, regardless of whether relator had a contract of employment for the next school year.

In additional points respondent argues that inasmuch as relator did not accept the offered employment within fifteen days from receipt of the notice of reemployment as provided by § 73–12–13(e), N.M.S.A. 1953, Pocket Supp., the offer was rescinded, and respondent had a right to dismiss relator, give notice thereof and hold hearings thereon.

Respondent's third point raises a question of whether relator could seek relief in the courts without exhausting all administrative remedies provided in the statutes.

The applicable sections of our statutes are §§ 73–12–13 and 73–12–15, N.M.S.A. 1953, Pocket Supp., the pertinent portions of which are as follows:

"73–12–13. Written notice of desire to continue or discontinue teacher's service—Hearing by governing board—Procedures prescribed by state board of education in dismissal proceedings—Causes for dismissal—Appeals to state board of education on decisions of governing boards—Appeal to district court—Teachers' contracts.—(a) On or before the closing day of each school year the governing board of education, hereinafter referred to as the governing board, of each school district in the state, whether rural, municipal or otherwise shall serve written notice of reemployment of or dismissal upon each teacher by it then employed, certified as qualified to teach by the state board of education, hereinafter referred to as the state board. Written notice of placement shall also be given to such qualified teachers employed by county boards of education on or before the closing day of school of each year.

"(b) The notice of dismissal required under subsection (a) of this section to a certified teacher who has taught in a particular county or other particular administrative school unit for three (3) consecutive years and holds a contract for the completion of a fourth consecutive year in a particular district shall specify a place and date for a hearing not less than five (5) days nor more than ten (10) days from the date of service of such notice at which time the teacher may appear. Notice of dismissal shall con-

tain a statement of the cause or causes for dismissal upon which the governing board bases its decision to terminate the services of any teacher. Causes for dismissal of teachers shall be any such causes specified in the uniform contract approved by the state board for New Mexico school teachers or any other good and just cause. Personal service of such notice shall be made as provided by law for civil service of process and proof thereof shall be made by the affidavit of the person making such service. Any teacher aggrieved by the decision rendered after such hearing by the governing board may within ten [10] days from the date of receipt thereof appeal to the state board.

"(c) Upon the filing of an appeal under subsection (b) of this section the state board shall without delay require the governing board to file with it a transcript of the record and upon receipt of such transcript shall review the case and determine whether or not the appeal should be allowed or denied. If the appeal is allowed the state board · shall review the procedures followed by the governing board from the inception of the cause or causes upon which original decision of the governing board to terminate the service of the teacher were based. If the state board · finds in writing that

there exists a substantial departure prejudicial to the appellant-teacher from the procedures prescribed by the state board under subsection (d) of this section for governing boards in the dismissal of teachers, such teacher shall be considered employed for the following year under the terms of his existing contract and shall be entitled to any additional compensation allowed other teachers of like qualifications and experience employed in the same school system or administrative school unit. Any teacher or governing board aggrieved by decision of the state board may appeal to the district court, at which time a trial de novo of all matters of law and fact shall be had.

"(d) The state board shall prescribe procedures for governing boards to be followed in the dismissal of teachers. These shall include:

"(1) Operational and personnel management standards relating to supervision and correction of teachers whose teaching performance is unsatisfactory before resort to dismissal should be had.

"(2) Standards for the· conduct of hearings on dismissal proceedings to include requirement that all testimony given thereat shall be under oath, that parties be represented by counsel if desired and allowed to cross-examine

witnesses, and that proceedings be recorded in writing.

"(3) Decision of the governing board to be based on the evidence in the record.

"(4) Written records made at or reasonably near the time that supervisory and counseling recommendations are made to a teacher as to improvement of his teaching performance or on other matters and the teacher's written response thereto shall be used in evidence in dismissal proceedings.

"(e) Every teacher who receives a notice of reemployment under subsection (a) of this section shall within fifteen [15] days from the receipt of such notice deliver to the governing board his acceptance or rejection of such reemployment in writing and every teacher who is finally successful on appeal to the state board from a decision of dismissal by the governing board within fifteen [15] days from the receipt of notice thereof shall similarly notify the governing board. The acceptance by the teacher of reemployment as contained in the notice of reemployment or in the decision of the state board shall stand in lieu of the formal contract until the latter is executed.

"(f) Written contracts on forms approved by the state board shall be executed by governing boards and teachers not later than ten [10] days before the opening of the next school term."

"73–12–15. Discharge of contract teachers—Hearings—Written charges —Notice—Right of appeal to state board—Hearing de novo—Decision final—Salary terminated—Salary reinstated.—No teacher having a written contract shall be discharged except upon good cause and after hearing on written charges, which, together with written notice of the time and place of hearing, shall be served upon said teacher at least five [5] days prior to such hearing. Such teacher shall have the right to appeal within ten [10] days to the state board of education. which board shall hear the matter de novo at a time and place to be by it fixed and the decision of such state board of education shall be final. Payment of such teacher's salary shall be terminated as of the date of the decision of the local board of education that such teacher shall be discharged. In the event the decision of the local board is not affirmed by the state board of education upon appeal, payment of such teacher's salary shall be reinstated in full."

It is clear from a reading of the quoted sections of the statute that § 73–12–13

provides the procedures for employing or terminating employment of teachers; whereas § 73–12–15 sets forth the procedure for discharging teachers holding contracts.

It is also evident from a reading of the notice of hearing given relator, and respondent so concedes in its brief, that it was intended by the form of the notice to come within the requirements of either or both sections of the law.

■ An examination of the transcript and briefs discloses that whereas relator contended in the court below that respondent had no right to proceed under either § 73–12–13 or § 73–12–15, she now claims that she does not question respondent's right to hold hearings under § 73–12–15 and that the order entered did not prevent it from doing so.

On the other hand, respondent asserts that the peremptory writ, quoted supra, clearly prohibited its proceeding with any hearing whatsoever, and if it had undertaken to hold additional hearings it would have been subject to a contempt citation. Further, respondent states that if it can proceed to hold hearings under § 73–12–15, looking to the discharge of relator, nothing more will be required.

In the light of the position of the parties as set forth above, we see no necessity for determining the very interesting problems raised by the appeal. It is a sufficient disposition of the appeal to remand the cause to the trial court with instructions to amend its peremptory writ to permit respondent to proceed, if it is so advised, as provided in § 73–12–15, N.M.S.A.1953, Pocket Supp.

■ The relator, by cross-appeal, complains that the trial court erred in refusing to allow attorney fees as a part of the damages sustained, or costs and disbursements. Her argument is based on § 22–12–12, N.M.S.A.1953, which reads as follows:

"If judgment is given for the plaintiff, he shall recover the damages which he has sustained, together with costs and disbursements, and a peremptory mandamus shall be awarded without delay."

Relator asserts that although this court has never been called upon to pass on the question, it has been determined by the highest court of a number of states having substantially similar statutes that attorney fees are included within the term "damages." McClure v. Scates, 64 Kan. 282, 67 P. 856; Missouri Pacific Ry. v. Larrabee, 234 U.S. 459, 34 S.Ct. 979, 58 L.Ed. 1398, which applied the law of Kansas; State ex rel. O'Sullivan v. District Court, 127 Mont. 32, 256 P.2d 1076; Colorado Development Co. v. Creer, 96 Utah 1, 80 P.2d 914, are examples of such cases.

On the other hand, relator concedes that a contrary result has been reached in Commodore Mining Co. v. People, 82 Colo. 77, 257 P. 259; Calmenson Clothing Co. v. Kruger, 66 S.D. 224, 281 N.W. 203; and State ex rel. Thompson v. Board of School Directors, 179 Wis. 284, 191 N.W. 746.

A note on the subject may be found in 73 A.L.R.2d 903, 924.

Relator calls our attention to a number of decisions of this court which she argues tend to indicate that this court would construe the statute as being intended to include attorney fees. Among these are Webb v. Beal, 20 N.M. 218, 148 P. 487 and Woods v. Fambrough, 24 N.M. 488, 174 P. 996, allowing attorney fees in proceedings for dissolution of an injunction. In addition, Tatavich v. Pettine, 31 N.M. 479, 247 P. 840, and Dinkle v. Denton, 68 N.M. 108, 359 P.2d 345, are cited as indicating that this court recognizes that attorney fees may be granted in proper cases.

Respondent, however, points out that the general rule in New Mexico is that in the absence of a statute or rule of court, attorney fees are not taxed as costs or considered as an item of damages. State ex rel. Stanley v. Lujan, 43 N.M. 348, 93 P. 2d 1002; Keller v. Cavanaugh, 64 N.M. 86, 324 P.2d 783. He also argues that Webb v. Beal, supra; Woods v. Fambrough, supra; and Tatavich v. Pettine, supra, are within well-recognized exceptions to the general rule, being suits for recovery of attorney fees expended for the dissolution of injunctions. Respondent further contends that Dinkle v. Denton, supra, must be distinguished from the instant case in that the Dinkle case involved a claim by an indemnitor for attorney fees expended in defending the claim indemnified against. That an indemnitor may recover his attorney fees in such a case as damages in a suit against the one who caused the loss is also well recognized. Turner v. Zip Motors, Inc., 245 Iowa 1091, 65 N.W.2d 427, 45 A.L.R.2d 1174, and annotation following.

We agree with respondent. This court has always limited recovery of attorney fees by the rule announced in Keller v. Cavanaugh, supra, and is not at this time disposed to depart from it. If the legislature had desired attorney fees to be reimbursed in this type of case, we feel that it would have expressly so provided. Calmenson Clothing Co. v. Kruger, supra.

This is also a sufficient answer to relator's argument that "disbursements" include attorneys fees, for which no authority is cited. Although it is unnecessary to here decide, it is interesting to note that California has construed "costs and necessary disbursements" to be synonymous. Moss v. Underwriter's Report, Inc., 12 Cal.2d 266, 83 P.2d 503; Gibson v. Thrifty Drug Co., 173 Cal.App.2d 554; 343

P.2d 610. See, also, Dauntless Mfg. Co. v. Davis, 24 S.C. 536; United States v. Minneapolis, St. P. & S. S. M. Ry., D.C., 235 F. 951.

In view of the disposition of cross-appellant's appeal, it is unnecessary to dispose of cross-appellee's counterpoints.

The cause is remanded to the district court with direction that it proceed in accord herewith. IT IS SO ORDERED.

CARMODY and CHAVEZ, JJ., concur.

COMPTON, C. J., and NOBLE, J., not participating.