2007-NMCA-109

165 P.3d 1167

**Luis Padilla PAZ, M.D.,**
Petitioner–Appellee,

v.

**Manuel TIJERINA, Acting Director of the Risk Management Division of the State of New Mexico, and the Risk Management Division of the State of New Mexico, Respondents–Appellants.**

No. 26,473.

Court of Appeals of New Mexico.

June 25, 2007.

Silva & Saucedo, P.C., Steven L. Gonzales, Benjamin Silva, Jr., Albuquerque, NM, for Appellee.

Gary K. King, Attorney General, Jerome Marshak, Assistant Attorney General, Santa Fe, NM, for Appellants.

## OPINION

KENNEDY, Judge.

{1} The Risk Management Division of the State of New Mexico (RMD) and its acting director, Manuel Tijerina, (together Respondents) appeal from the district court's order awarding attorney fees and costs to Luis Padilla Paz, M.D. (Petitioner). We reverse the award of attorney fees. We remand on the issue of costs because Petitioner's application lacked the specificity required by Rule 1–054(D)(4) NMRA and our case law.

### Factual and Procedural Background

{2} Petitioner is a surgeon who was employed by the University of New Mexico (UNM) Hospital from August 1, 2001, until he resigned on September 24, 2004. On October 28, 2004, UNM filed suit against Petitioner alleging violations of an anti-competition agreement (contract suit).

{3} RMD is responsible for implementing the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41–4–1 to–27 (1976, as amended through 2006). *See generally* NMSA 1978, §§ 15–7–1 to–11 (1977, as amended through 2000) (describing the establishment of RMD and its advisory board, as well as RMD's duties, powers, and management of public liability funds). On September 13, 2004, RMD received a tort claims notice, which named UNM Hospital and Petitioner, in his capacity as an employee of UNM, in a potential wrongful death action based on medical malpractice. Shortly thereafter, RMD assigned Carl Warren & Co. to investigate the facts underlying the tort claims notice. Petitioner was advised that RMD had received the notice and that it involved one of Petitioner's former patients at UNM Hospital. Petitioner requested copies of the tort claims notice and more information about the claim and RMD's investigation. RMD refused to release the notice to Petitioner and did not appoint independent defense counsel to defend Petitioner.

{4} On June 3, 2005, Petitioner filed a petition for writ of mandamus directing Respondents to produce certain records, including the tort claims notice, and to assign defense counsel to him. Petitioner claimed that Respondents had a statutory duty to provide a defense under Section 41–4–4(B) of the TCA, which provides in part that "a governmental entity shall provide a defense, including costs and attorney fees, for any public employee when liability is sought for ... any tort alleged to have been committed by the public employee while acting within the scope of his duty." He also argued that Respondents were required to disclose records relevant to the claim pursuant to Section 15–7–9(B), which provides that records created or maintained by RMD shall be

made available "as necessary for purposes of audit or defense."

{5} The district court issued the writ of mandamus on June 21, 2005. Respondents answered the writ and moved to dismiss it. At the hearing on the writ, the district court recognized that if a lawsuit had been filed pursuant to the tort claim notice, RMD would be required to appoint counsel for Petitioner. It then found that there were compelling reasons in this particular case to enforce the writ by requiring RMD to appoint counsel for Petitioner even though no lawsuit had yet been filed. The court expressed concern that to do otherwise, Petitioner would be disadvantaged in the event a lawsuit was eventually filed because existing public employees would have already had access to RMD's information. The court also ordered RMD to turn over its entire investigation file to Petitioner.

{6} At the hearing on the writ, Petitioner requested, and the district court awarded, Petitioner's attorney fees and costs incurred in bringing the mandamus petition. The order enforcing the writ of mandamus, including the provision awarding attorney fees and costs, was entered on September 2, 2005. Respondents did not appeal from that order and provided Petitioner with documents and defense counsel. No lawsuit based on the tort claims notice has ever been filed against Petitioner, and the statute of limitations period for filing such a lawsuit has expired.

{7} On November 17, 2005, Petitioner submitted an application for attorney fees, requesting $21,433 in fees and $845.71 in costs plus gross receipts. Respondents objected to the application. After a hearing, the district court awarded the entire amount of fees and costs requested by Petitioner. Respondents now appeal from that order.

**Discussion**

**Standard of Review**

{8} We review an award of attorney fees for an abuse of discretion. *N.M. Right to Choose/NARAL v. Johnson (NARAL )*, 1999–NMSC–028, ¶ 6, 127 N.M. 654, 986 P.2d 450. However, our review of legal questions and the "application of the law to

the facts is conducted de novo." *Id.* ¶ 7; *see Fort Knox Self Storage, Inc. v. W. Techs., Inc.*, 2006–NMCA–096, ¶ 29, 140 N.M. 233, 142 P.3d 1 (noting that while the trial court has broad discretion in awarding attorney fees, any question of law will be reviewed de novo). A district court abuses its discretion if its decision is contrary to logic and reason. *NARAL*, 1999–NMSC–028, ¶ 6, 127 N.M. 654, 986 P.2d 450. Moreover, "a discretionary decision that [is] premised on a misapprehension of the law" can be characterized as an abuse of discretion. *Id.* ¶ 7 (alteration in original) (internal quotation marks and citation omitted).

**Statutory Authority for Attorney Fees Award**

{9} In determining whether an attorney fee award is appropriate, New Mexico follows the American rule which states that, in the absence of statute, court rule, or contractual agreement, the prevailing party will not normally receive attorney fees. *See id.* ¶ 9; *Schroeder v. Mem'l Med. Ctr.*, 1997–NMSC–046, ¶ 6, 123 N.M. 719, 945 P.2d 449. In this case, Petitioner makes no claim that he is entitled to attorney fees based on contract or court rule. Therefore, we consider whether the award is authorized by statute.

{10} Petitioner asserts that the attorney fee award is supported by the TCA, which imposes a duty to defend Petitioner upon RMD and embodies a public policy that "public employees should not bear the financial burdens related to tort claims arising from their public duties, including the burden of defending against such claims." *See* § 41–4–4(B). It is undisputed that the TCA imposes a duty upon RMD to provide a defense to Petitioner. We assume without deciding that this undisputed duty supports the district court's decision to enforce the writ compelling Respondents to appoint independent defense counsel to represent Petitioner. However, the issue in this case is not whether RMD had a duty to defend Petitioner, but whether the TCA entitles Petitioner to the attorney fees incurred by Petitioner in compelling Respondents to fulfill that duty. Contrary to Petitioner's contentions, nothing in the TCA authorizes the award of fees

incurred in bringing the mandamus action. Section 41–4–4(B)(1) safeguards employees from expenses, including the cost of defense, arising from tort actions, but not from mandamus actions.

{11} Likewise, Petitioner is not entitled to attorney fees under the mandamus statute. NMSA 1978, § 44–2–12 (1953) provides: "If judgment is given for the plaintiff, he shall recover the damages which he has sustained, together with costs and disbursements, and a peremptory mandamus shall be awarded without delay." However, "damages ... costs and disbursements" do not include attorney fees. *See State ex rel. Roberson v. Bd. of Educ.*, 70 N.M. 261, 266–67, 372 P.2d 832, 836–37 (1962) (holding that attorney fees are not recoverable as a part of damages, costs or disbursements).

{12} Moreover, we are unpersuaded that the analysis in *Triplett v. Town of Oxford*, 439 Mass. 720, 791 N.E.2d 310 (2003), warrants a different result. Petitioner is correct that *Triplett* indirectly stands for the proposition that statutes such as the TCA were enacted to shield public employees from the personal expense incurred in the defense of tort actions. *Id.* at 313–14. While the implicit holding in *Triplett* might support Petitioner's contention that Respondents owed a duty to defend Petitioner for any tort claims arising during Petitioner's employment with UNM, the case fails to support Petitioner's contention that Respondents are also responsible for the attorney fees incurred by Petitioner in obtaining that defense. *See id.* at 315–16 (holding that a state employee was not entitled to reimbursement of attorney fees incurred in defending criminal charges or an ethics violation under Massachusetts's version of the TCA because the statute only applied to defense costs incurred in defending civil actions based upon tort or civil rights violations).

**The Insurance Code**

{13} Petitioner also claims that he is entitled to attorney fees based upon principles found in the New Mexico Insurance Code. Section 59A–16–30 of the Insurance Code authorizes an award of attorney fees to an insured who is forced to file a lawsuit to compel its insurer to defend a covered lawsuit in certain circumstances. *See* NMSA 1978, § 59A–16–30(B) (1990) (providing that a court may award attorney fees to a person who prevails in an action for damages suffered due to violations of Chapter 59A, Article 16 by an insurer or agent if "the party charged with the violation of that article has willfully engaged in the violation"). Petitioner argues that he is entitled to attorney fees because RMD functions as an insurer. We disagree because, as Petitioner concedes, RMD is exempt from the Insurance Code. *See* NMSA 1978, § 59A–1–16(C) (2001) (stating that the Insurance Code shall not apply to RMD).

{14} Petitioner argues that, despite RMD's exemption from the Insurance Code, the policies contained therein should still apply by analogy. He then contends that if RMD was subject to the Insurance Code, attorney fees would be available, so attorney fees should be available in this case. We are unpersuaded given that the Insurance Code clearly exempts RMD from its coverage. *See* § 59A–1–16(C).

{15} Furthermore, to whatever extent the policies underlying the Insurance Code appear similar to the public policy of the TCA to relieve a public employee from liability for a tort claim, the Legislature did not deem any such similarities sufficiently compelling to include a statutory provision in the TCA entitling a public employee to reimbursement of attorney fees incurred in compelling a defense of a tort claim. We refuse to second guess the Legislature on this issue because if the Legislature wanted employees to be reimbursed for having to compel a defense under the TCA, it could have so provided in the Act. *See Roberson*, 70 N.M. at 267, 372 P.2d at 837 (stating that "[i]f the legislature had desired attorney fees to be reimbursed in this type of case, we feel that it would have expressly so provided"); *cf.* NMSA 1978, § 14–2–12(D) (1993) (providing that "[t]he court shall award damages, costs and reasonable attorneys' fees to any person whose written request has been denied and is successful in a court action to enforce the provisions of the Inspection of Public Records Act"); NMSA 1978, § 52–1–54(F)(4)

(2003) (providing that if a worker made an offer in settlement of a compensation claim and the offer was less than the amount eventually awarded in the compensation order, the employer "shall pay one hundred percent of the attorney fees to be paid the worker's attorney").

{16} Finally, for reasons discussed later in this opinion, we are unpersuaded that attorney fees would be recoverable even if RMD were subject to the Insurance Code. There is no evidence that RMD acted in bad faith or willfully denied coverage to Petitioner; it merely disagreed that Petitioner needed independent counsel before a lawsuit had been filed.

**Public Policy**

{17} Petitioner next asks this Court to recognize a new exception to the American rule based upon reasons of public policy. Petitioner argues that a new exception should be created for cases in which RMD has wrongfully withheld a legal defense and related documents from a current or former employee who is the target of a tort claim and the former employee is in active litigation with another target of the tort claim that RMD has supplied with a defense and documents. Petitioner cites to two of the policies underlying the American rule and then claims that an award of attorney fees in this case would not frustrate either policy. *NARAL*, 1999–NMSC–028, ¶¶ 12–13, 127 N.M. 654, 986 P.2d 450 (noting that "[t]wo important policies underlie the American rule. First and foremost, the American rule promotes equal access to the courts for the resolution of *bona fide* disputes" and second "the American rule tends to preserve judicial resources" (internal quotation marks and citations omitted)). We are unpersuaded.

{18} We disagree that allowing an exception to the American rule in this case would not frustrate the policy of equal access to the courts. The "equal access" policy is based upon the underlying rationale that "one should not be penalized for merely defending or prosecuting a lawsuit." *Id.* ¶ 12 (internal quotation marks and citation omitted); *cf. Dunleavy v. Miller*, 116 N.M. 353,

363, 862 P.2d 1212, 1222 (1993) (recognizing that New Mexico courts have been unwilling to "allow litigation costs so high as to discourage litigants from bringing [or defending] lawsuits, no matter how meritorious they might in good faith believe their claims to be" (internal quotation marks and citation omitted)).

{19} In this case, Respondents did not exercise bad faith in opposing the writ given that there are no cases interpreting what is meant by the language in Section 15–7–9(B) that otherwise confidential materials can be disclosed for the "purpose of ... defense" and given that there are no cases addressing RMD's duty to appoint independent defense counsel before a lawsuit has been filed. If the fee award is affirmed, RMD and other similarly situated defendants will be impermissibly chilled in the future from mounting a defense that is brought in good faith. *See NARAL*, 1999–NMSC–028, ¶ 12, 127 N.M. 654, 986 P.2d 450.

{20} Moreover, we disagree that affirming the award in this case would not result in the undue expenditure of judicial resources. *See id.* ¶ 13. Affirming the award of attorney fees could encourage the filing of a mandamus petition by any public employee who is concerned about a tort claims notice that has been filed even if RMD has properly decided that the claim has no merit. RMD could be compelled to provide former employees with an independent defense in cases where the defense is not yet warranted merely to avoid the possibility of an attorney fees award thus "unduly discouraging the government from mounting a good faith defense .... [and failing to] promote the goal of conserving judicial resources." *Id.* ¶ 31.

{21} Finally, recognition of a new exception would be inconsistent with the policy that any exceptions must be "limited in number and narrow in scope." *Id.* ¶ 15. In this case, the court awarded attorney fees because Petitioner had to sue to get the relief requested in the mandamus petition and decided that Petitioner "shouldn't have to pay to go after what is legally his." If this was sufficient justification for an exception to the American rule, any plaintiff that prevails in a

civil suit would be entitled to fees because Petitioner's circumstances, having to resort to court to obtain what was "legally his," are no different from many litigants who bring a civil suit to obtain goods or services to which they claim a legal entitlement. Allowing the attorney fees award to stand would create an exception that is not narrow in scope and thus contrary to the long-established American rule recognized in New Mexico. *See id.* ¶ 10 (rejecting the plaintiffs' request to recognize a new exception to the American rule pursuant to the "private attorney general doctrine" because the plaintiffs were unable to justify the departure (internal quotation marks and citation omitted)).

**Bad Faith**

{22} Even if the attorney fee award is not authorized by statute or a new exception to the American rule, Petitioner claims that fees were properly awarded as a sanction for Respondents' bad faith conduct. *See State ex rel. N.M. State Hwy. & Transp. Dep't v. Baca,* 120 N.M. 1, 4–5, 896 P.2d 1148, 1151–52 (1995) (adopting the bad-faith exception to the American rule).

{23} It is well established that courts have the inherent authority "to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings." *Id.* at 4, 896 P.2d at 1151 (internal quotation marks and citation omitted). This inherent authority extends only to those proceedings before the sanctioning court or those in direct defiance of that court. *See id.* at 5, 896 P.2d at 1152.

{24} The district court made no findings that Respondents were acting in bad faith or engaging in misrepresentations, and Petitioner concedes that the district court never reached his argument regarding Respondents' alleged bad faith conduct. He nonetheless urges us to consider this argument and to affirm the fee award under a "right for any reason" analysis. *See Sam v. Estate of Sam,* 2006–NMSC–022, ¶ 11, 139 N.M. 474, 134 P.3d 761 (stating that "[a]n appellate court will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant" (internal quotation marks and citation omitted)). We decline to do so.

{25} Petitioner relies on the information contained in the supplemental exhibits to support his contention that Respondents acted in bad faith. These documents consist mostly of e-mails, other correspondence, and status reports between Petitioner, Petitioner's counsel on the contract claim, Respondents, UNM officials, counsel for UNM, and the claims adjuster retained by RMD. Many of the items are duplicate copies of identical e-mails. The supplemental exhibits were produced by RMD pursuant to the order enforcing the writ of mandamus. As the supplemental exhibits were produced pursuant to the order enforcing the writ, they could not have been before the district court at the time it entered that order and awarded attorney fees. Therefore, to whatever extent the documents contain evidence of Respondents' bad faith, this evidence cannot support the attorney fee award. *See Garcia v. Jeantette,* 2004–NMCA–004, ¶¶ 22–26, 134 N.M. 776, 82 P.3d 947 (refusing to affirm an attorney fee award as a sanction for bad faith conduct pursuant to the "right for any reason" doctrine because it would be unfair to the appellant to affirm on such a "fact-dependent ground" that was not raised below). The district court made its decision to award attorney fees based on legal arguments; it would be unfair to now affirm the award on such fact-dependent grounds of bad faith conduct when the district court made no findings on this issue. *See Cockrell v. Cockrell,* 117 N.M. 321, 323, 871 P.2d 977, 979 (1994) (stating that questions of fact will not be originally determined on appeal).

{26} Even if the documents contained in the supplemental exhibits had been before the district court at the time of the attorney fee award, they cannot support the award because they concern communications and other activities that occurred before Petitioner filed his application for the writ of mandamus. Any allegedly bad faith conduct occurring before commencement of a legal proceeding cannot be used to support an attorney fee award that is ostensibly a sanction for the bad faith behavior. *See ACLU v.*

*City of Albuquerque,* 1999–NMSC–044, ¶ 28, 128 N.M. 315, 992 P.2d 866 (holding that the bad faith exception to the American rule was inapplicable when the allegations regarding the City's bad faith in enacting the ordinance did not concern conduct before the court or in defiance of the court's authority); *Baca,* 120 N.M. at 5–7, 896 P.2d at 1152–54; *Garcia,* 2004–NMCA–004, ¶ 23, 134 N.M. 776, 82 P.3d 947 (noting that " 'the district court's authority to impose sanctions does not extend to pre-litigation conduct, [but] under its inherent power, the court may in appropriate cases impose attorney's fees as sanctions for bad faith, vexatious litigation, or acts in defiance of a court order, where such acts arise out of post-litigation conduct' " (quoting *Martinez v. Martinez,* 1997–NMCA–096, ¶ 23, 123 N.M. 816, 945 P.2d 1034)); *cf. Gonzales v. Lopez,* 2002–NMCA–086, ¶¶ 18–20, 132 N.M. 558, 52 P.3d 418 (reversing an attorney fee award despite the district court's findings that the award was supported by the defendants' fraudulent conduct because any such award would be at odds with the American rule).

{27} Even if the district court could have awarded sanctions based upon Respondents' conduct leading up to the petition for a writ of mandamus, there is nothing in the record or supplemental materials supporting Petitioner's contention that Respondents acted in bad faith in opposing the writ, refusing to appoint counsel for Petitioner, and refusing to provide discovery to Petitioner.

{28} Petitioner claims that Respondents knew their position was contrary to RMD's historical practices and that their bad faith is exhibited by the disparity in its treatment of this claim and the treatment of an earlier tort claims notice. We disagree because RMD's "historical practices" concern RMD's investigation and treatment of potential defendants who were still public employees at the time of the tort claims notice. In the previous case involving Petitioner, Petitioner was still an employee of UNM at the time of the earlier investigation so the claims investigator and UNM's counsel could meet with Petitioner and review the patient's medical records without invoking privacy and privilege concerns. In this case, consistent with its historical practices, RMD hired a claims investigator to investigate the claim on behalf of all potential defendants. However, the pending lawsuit against Petitioner and his status as a former employee rendered the historical practices impractical which gave rise to the confusion as to how Petitioner should be treated.

{29} Moreover, we disagree that Respondents acted in ways contrary to the position they disclosed to Petitioner. Petitioner asserts that Respondents' entire case was based on the premise that they were forbidden by law from taking any action on the basis of the tort claims notice. He then claims that RMD's act of hiring a claims adjuster to investigate the facts giving rise to the tort claims notice is inconsistent with that position.

{30} Our review of the record and exhibits indicates that Respondents never claimed that all actions were forbidden, and, contrary to Petitioner's contentions, RMD never maintained that it could not hire an investigator or investigate the claim. It only claimed that it was not required to appoint an attorney to represent Petitioner unless and until a lawsuit was actually filed against him and that it was precluded from turning over confidential documents to Petitioner because Petitioner was no longer a public employee.

{31} We also disagree that the supplemental exhibits support a finding of a conspiracy between UNM and RMD to gain a strategic advantage in the employment litigation. Respondents were aware of the lawsuit and aware of UNM's concerns that Petitioner's attorney in the contract suit had no right to review the materials in the tort claims matter. However, there is nothing in the supplemental exhibits suggesting that Respondents took any position on the contract litigation or did anything to further UNM's position in that litigation or even had substantive discussions with UNM about the contract suit. Likewise, UNM's in-house counsel, who was not the attorney representing UNM on the contract claim, appeared to have no direct connection to the contract suit. She was not seeking information about the contract suit and specifically informed the claims investigator that "[we] do not

want to hear anything from [Petitioner] regarding any other legal issue he may or may not have with the Regents."

{32} We are unpersuaded that Petitioner was excluded from the investigation or deprived of information in order to pressure him in the contract suit. Instead, Respondents' actions can be explained by Petitioner's status as an ex-employee with a pending lawsuit against his former employer. The communication between UNM, the claims adjuster and RMD merely indicates that the claims adjuster, while investigating the claim, sought guidance from RMD as to whether independent counsel would be appointed for Petitioner.

{33} Even though it is undisputed that the investigator and RMD communicated with UNM, this is not evidence of conspiracy or bad faith. RMD had a duty to consult with UNM because they were also named in the tort claims notice. As a potential defendant, UNM cooperated in the investigation but was concerned that Petitioner's lawyer on the contract claim would be improperly given access to information about the tort claim and expressed this concern to RMD. Nothing suggests a conspiracy or that RMD "marshaled its forces" in favor of UNM to the exclusion of Petitioner. Instead, the communications indicate some confusion about the status of the law and the extent of RMD's obligation to provide Petitioner with counsel and with documentation given the privacy concerns expressed by UNM's in-house counsel and confidentiality laws.

{34} Likewise, there is no evidence that RMD had commenced a "defense" in favor of UNM that specifically excluded Petitioner. The evidence only suggests an investigation had commenced. The evidence shows that the investigator met with one current UNM employee, Dr. Howdieshell, because it had access to him, not in an effort to exclude Petitioner. Other employees were identified as possible sources of information but apparently were never contacted.

{35} Finally, we turn to Petitioner's contention that Respondents failed to produce all of the documents compelled by the order enforcing mandamus. Petitioner never informed the district court about this alleged failure to produce. Therefore, we decline to address this issue due to lack of preservation. *See Cockrell,* 117 N.M. at 323, 871 P.2d at 979 (observing that "to preserve trial error for appeal it is necessary to call the error to the attention of the trial court"); *Azar v. Prudential Ins. Co. of Am.,* 2003–NMCA–062, ¶ 22, 133 N.M. 669, 68 P.3d 909 (" 'To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.' " (quoting *Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987))).

## Costs

{36} Based upon our reversal of the attorney fees award, we need not address Respondents' contention that the award was untimely or not in compliance with court rules. Respondents also challenge the award of costs to Petitioner. We first address the timeliness of Petitioner's application for costs.

{37} Petitioner was awarded costs in the final judgment on September 2, 2005, but he did not file his application for attorney fees and costs until November 17, 2005. Rule 1–054(D)(4) NMRA requires a cost bill to be filed within fifteen days of the final judgment.

{38} It appears that Petitioner informally moved for an extension of time in his reply brief. *See* Rule 1–006(B)(2) NMRA (authorizing the district court to exercise its discretion and grant an extension of time upon the delinquent party's motion and a finding that the failure to act was the result of excusable neglect). Petitioner sought the extension based upon excusable neglect claiming that, as the court had already awarded costs and attorney fees, he did not understand that there was a time limit on submitting the itemized claim. We assume that the district court implicitly granted the motion for an extension when it granted Petitioner's application for costs. We cannot conclude that the district court abused its discretion in so doing. *Cf. Sunwest Bank of Albuquerque v. Roderiguez,* 108 N.M. 211, 213, 770 P.2d 533, 535 (1989) (stating that a trial court abuses

its discretion if its decision is arbitrary or unreasonable).

{39} Even though Petitioner's application for costs was not untimely, we nonetheless refuse to affirm it. Section 44–2–12, while authorizing an award of costs, does not specifically address which costs are allowed. Rule 1–054(D)(2) describes the types of costs that are generally recoverable, but together with LR2–302(A) NMRA, an itemized cost bill is required. As Petitioner failed to submit an itemized cost bill, we are unable to determine whether the district court abused its discretion in awarding $845.71 of costs. *See Hertz v. Hertz*, 99 N.M. 320, 329, 657 P.2d 1169, 1178 (1983) (reversing an award of $3,500 in costs for lack of specificity and remanding for the district court to enter more specific findings so that it could be determined on appeal whether there was substantial evidence to support the cost award). Therefore, we remand for an additional hearing after Petitioner's counsel submits an itemized cost bill.

## CONCLUSION

{40} For these reasons, we reverse the award of attorney fees. We remand for a redetermination of the amount of costs once Petitioner submits the requisite itemized cost bill.

{41} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and IRA ROBINSON, Judges.