This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37806

**MORRIS K. ESTEP,**

Petitioner-Appellant,

v.

**MARY L. ESTEP,**

Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mary W. Rosner, District Judge**

Durham, Pittard & Spalding, LLP
Caren I. Friedman
Santa Fe, NM

for Appellant

Law Office of Martinez-Salopek, LLC
Ramona J. Martinez-Salopek
Las Cruces, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}** Morris Estep (Husband) appeals the district court's orders related to divorce and child custody proceedings between Husband and Mary Estep (Wife), challenging the district court's decisions regarding (1) relocation of their two children (Children), (2) child support, (3) spousal support, (4) Husband's military retirement benefits and federal thrift savings plan, and (5) attorney fees. We affirm.

## BACKGROUND

**{2}** Given that the parties are familiar with the facts and details of this case, we only briefly set forth pertinent facts and applicable law in this memorandum opinion, reserving further discussion of specific facts where necessary to our analysis. *See* Rule 12-405(B) NMRA (providing that appellate courts may dispose of a case by non-precedential order, decision, or memorandum opinion under certain circumstances); *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361 ("[M]emorandum opinions are not meant to be cited as controlling authority because such opinions are written solely for the benefit of the parties[ and s]ince the parties know the details of the case, such an opinion does not describe at length the context of the issue decided[.]").

**{3}** The parties were married in 2002, and Husband filed a petition for dissolution of marriage on May 20, 2016. They entered into a stipulated marital settlement agreement and parenting plan on May 25, 2016, and the district court entered a stipulated judgment and final decree of dissolution of marriage on the same date. Thereafter, Wife obtained counsel and filed a motion for relief from judgment alleging that Husband never served her with the petition for dissolution of marriage and that Husband obtained her signature on the marital settlement agreement and parenting plan by deception, misrepresentation, and misconduct. Granting Wife's motion, the district court set aside the marital settlement agreement, the parenting plan, and the final decree of dissolution of marriage by order on March 28, 2017. Its order was supported by written findings of fact and conclusions of law filed therewith, including findings that Husband "overreached in his part of the divorce transactions[,]" breached his fiduciary duty to Wife, and that while Wife did sign "important legal documents, [she did so] under duress."

**{4}** Following the district court's order, litigation between the parties continued, which led to multiple hearings in district court. In one such hearing on July 23, 2018, (the July hearing), the district court awarded primary physical custody of Children to Wife. This was a departure from the court's previous temporary custody order—which had been based on recommendations by an appointed expert custody evaluator—wherein the district court awarded primary physical custody to Husband and allowed him to relocate Children to Texas.

**{5}** The district court filed three separate orders following the July hearing: an order dividing military retirement, an order dividing Husband's federal thrift savings plan, and a general order that included a summary of the district court's reasoning for altering the custody and timesharing arrangement. Husband thereafter filed multiple motions including a motion for extension of time to file proposed findings of fact and conclusions of law in response to the July hearing, a motion seeking reconsideration and withdrawal of the district court's orders dividing military retirement benefits, and a motion to alter the three orders filed after the July hearing. Although the July hearing is referred to as the "final" hearing by the district court, the court held another hearing on Husband's ensuing motions on October 4, 2018 (the October hearing). Following the October hearing, the district court filed four additional orders: (1) an amended order dividing military retirement, (2) an order regarding Husband's motion to alter orders, (3) an order

denying Husband's motion for extension of time to file proposed findings of fact and conclusions of law, and (4) an order denying Husband's motion to reconsider. Husband appeals from the four final orders.

## DISCUSSION

**{6}** On appeal, Husband argues the district court erred in the following ways: (1) granting primary physical custody to Wife after having previously awarded temporary, primary physical custody to Husband and allowing Husband to relocate with Children to Texas; (2) calculating and awarding child support; (3) awarding spousal support; (4) dividing Husband's military retirement benefits; (5) dividing Husband's federal Thrift Savings Plan (TSP); and (6) awarding attorney fees. We address each argument in turn.

### I. The District Court Did Not Err in Its Custody Determination

**{7}** Husband argues that the district court erred in awarding primary physical custody to Wife because there was no intervening change in circumstances that could justify a modification to the previous custody arrangement. Husband additionally argues that the district court made no findings reflecting a substantial and material change in circumstances affecting the welfare of Children, and thus, the district court's custody modification was erroneous.

**{8}** "A trial court has wide discretion in awarding custody of a child in a divorce case, and the welfare of the child is of primary importance in making the award." *Creusere v. Creusere*, 1982-NMSC-126, ¶ 5, 98 N.M. 788, 653 P.2d 164. "We review a district court's child custody determination for abuse of discretion." *Hopkins v. Wollaber*, 2019-NMCA-024, ¶ 9, 458 P.3d 583 (internal quotation marks and citation omitted). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Hough v. Brooks*, 2017-NMCA-050, ¶ 18, 399 P.3d 387 (internal quotation marks and citation omitted). Under such review, "we will uphold the district court's findings if they are supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). Additionally, pursuant to NMSA 1978, Section 40-4-7(G) (1997), "[t]he court may modify and change any order or agreement merged into an order in respect to the guardianship, care, custody, maintenance or education of the children whenever circumstances render such change proper[,]" but "only upon . . . showing . . . a substantial change in circumstances since the prior order that affects the best interests of the children." *Grant v. Cumiford*, 2005-NMCA-058, ¶ 13, 137 N.M. 485, 112 P.3d 1142 (internal quotation marks and citation omitted).

**{9}** Here, the district court initially issued a *temporary* custody and timeshare order on August 3, 2017, awarding primary physical custody to Husband and explaining that based on recommendations by an appointed expert custody evaluator, it was "in the best interests of [C]hildren" to relocate with Husband to Texas. However, at the July

hearing, the district court instead awarded primary physical custody to Wife. At the hearing, Husband's counsel asked for a statement of findings by the district court justifying the reversal of primary physical custody and the propriety of Children's relocation to Texas with Husband. The district court—referring to evidence that, since having relocated with Husband, Children "continually express[ed]" their desire to be with Wife—cited to NMSA 1978, Section 40-4-9(A) (1977), which provides that when considering the custody of a minor under the age of fourteen, a court's determinations must be in accordance with the best interests of the child and that in making such determinations, a court shall consider all relevant factors including, but not limited to:

(1) the wishes of the child's parent or parents as to his [or her] custody;
(2) *the wishes of the child as to his [or her] custodian*;
(3) the interaction and interrelationship of the child with his [or her] parents, his [or her] siblings, and any other person who may significantly affect the child's best interest;
(4) the child's adjustment to his [or her] home, school and community; and
(5) the mental and physical health of all individuals involved.

(Emphasis added.) While a court *must* consider the desired custodial arrangement of a minor *over* the age of fourteen, *see* § 40-4-9(B), where, as here, Children are under the age of fourteen, the court has discretion to consider Children's wishes when awarding custody.

**{10}** While the district court exercised its discretion to consider the wishes of Children to live with Wife, we disagree with Husband's contention that the district court's decision to modify primary physical custody was based solely on the wishes of Children. Rather, the district court heard and relied on testimony from the appointed parenting coordinator who stated that relocation to Texas had adversely impacted Children because, although they had "settled in" and adapted to their new community, they did not have frequent contact with Wife. The parenting coordinator also testified that Wife was "far more psychologically stable" than previously evaluated. The district court also heard and relied on testimony from the appointed expert child custody evaluator who stated that based on the changes in circumstances testified to by the parenting coordinator, he could not again recommend that Husband relocate Children to Texas and his earlier report and recommendation were now "stale," emphasizing that he "hope[d] the [c]ourt would place more weight on what is going on at this point in time than perhaps what was going on a year ago" when he first issued his report.

**{11}** On the record before us, we conclude that the district court based its custody order on evidence demonstrating a substantial change in circumstances in accordance with applicable statutory requirements. *See State ex rel. Children, Youth & Families Dep't v. Michelle B.*, 2001-NMCA-071, ¶ 27, 130 N.M. 781, 32 P.3d 790 (recognizing that child custody may be properly modified upon a showing of material changes in circumstances affecting the best interest of the child and explaining that a failure to apply requisite statutory guidelines when modifying a custody order constitutes an abuse of discretion). The record reflects that the district court considered the applicable

statute, testimony given at the hearing, the opinions of experts, and the changed circumstances from the outset of the case and its issuance of its temporary order. Under such circumstances, we cannot conclude that the district court abused its discretion in issuing its ultimate physical custody determination regarding Children.

## II. The District Court Did Not Err in Awarding Child Support

**{12}** Husband argues that the district court's award of child support is erroneous because it relied on an inaccurate calculation of Husband's income. "Child support determinations are made at the discretion of the district court and are reviewed for abuse of discretion." *Jury v. Jury*, 2017-NMCA-036, ¶ 26, 392 P.3d 242. "A district court abuses its discretion if it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Id.* (internal quotation marks and citation omitted).

**{13}** Generally, "[t]he basic child support obligation shall be calculated based on the combined income of both parents and shall be paid by them proportionately pursuant to Subsection K of [NMSA 1978, Section 40-4-11.1 (2008)]." Section 40-4-11.1(E). Subsection K of Section 40-4-11.1 provides a "basic child support schedule" that fixes each parent's child support obligation based on the parents' combined income and the number of children they have. This number is then adjusted upward or downward using the physical custody arrangement set out in the court's most recent child custody adjudication. Section 40-4-11.1(F). The physical custody adjustment is made using one of two worksheets set out in Subsection K: Worksheet A or Worksheet B. The applicable worksheet is determined by the type of custody arrangement in effect: if the custody arrangement has the children spending less than thirty-five percent of the time with one parent, then Worksheet A applies; if both parents have the children for more than thirty-five percent of the time, Worksheet B applies. Section 40-4-11.1(D), (F); *see also Erickson v. Erickson*, 1999-NMCA-056, ¶ 3, 127 N.M. 140, 978 P.2d 347. The statutory child support guidelines, as adjusted within the designated worksheet, "are presumed to provide the proper amount of child support." *Leeder v. Leeder*, 1994-NMCA-105, ¶ 6, 118 N.M. 603, 884 P.2d 494.

**{14}** Here, the district court used Worksheet A to determine a monthly child support amount owed by Husband to Wife in the amount of $2,140 per month. At the October 4, 2018 hearing, Husband argued that there was an error in his income as documented on Worksheet A, stating that his reported income was approximately $6,000 per month higher than the income he in fact received. Husband stated that this discrepancy was the basis for his motion to alter orders in which Husband stated simply that the child support determination in the district court's order was "erroneous because it does not reflect the evidence and testimony concerning the parties' financials." The district court informed Husband that his motion to alter orders was insufficient, and in order to issue a new order changing Husband's child support obligation, Husband needed to file a Rule 1-060(B) NMRA motion and therein provide the court with new evidence that could reveal a mistake, excusable neglect, or a change in circumstances demonstrating the original child support order was erroneous. The district court then directed Husband—

multiple times—to file such a Rule 1-060(B) motion. Husband filed no such motion, nor did he provide the district court with the requested evidence demonstrating error in the original child support order through some alternative means. Our review of the record indicates that the district court's original child support order was supported by evidence and based on correct standards and law. As such, and because Husband failed to more specifically articulate the errors he alleged occurred in the district court's consideration of evidence and subsequent order, we cannot conclude that the district court abused its discretion in awarding child support. *See Jury*, 2017-NMCA-036, ¶ 26.

### III.    The District Court Did Not Err in Awarding Spousal Support

**{15}**    Husband argues that the district court's award of spousal support is also erroneous because the court "failed to follow the [applicable] statutory factors" and there was insufficient evidence to support the amount and duration of the spousal support awarded.[1] We similarly review a district court's award of spousal support for an abuse of discretion. *Clark v. Clark*, 2014-NMCA-030, ¶ 8, 320 P.3d 991.

**{16}**    "In determining whether to order spousal support, the district court is to consider: (1) the needs of the proposed recipient, (2) the proposed recipient's age, health, and means of self support; (3) the proposed payor's earning capacity and future earnings; (4) the duration of the marriage; and (5) the amount of property owned by the parties." *Rabie v. Ogaki*, 1993-NMCA-096, ¶ 5, 116 N.M. 143, 860 P.2d 785; *see* § 40-4-7(E). "The actual need of the proposed recipient is a focal consideration in determining whether to order spousal support." *Clark*, 2014-NMCA-030, ¶ 7. "Whether to order spousal support, how much to order, and the duration of the order are within the sound discretion of the district court." *Rabie*, 1993-NMCA-096, ¶ 5.

**{17}**    Here, the district court ordered Husband to pay Wife spousal support in the amount of $2,000 per month for a period of six years, and $1,000 per month thereafter. This determination was based on the district court's findings that Husband was employed by the military during the majority of the parties' fourteen-year marriage, that Wife was supportive of Husband's military career while acting predominantly as a stay-at-home parent, and that, as such, Wife demonstrated a financial need following the dissolution of the marriage and Husband had an ability to pay spousal support.

---

1Husband argues as well that Wife's remarriage following the district court proceedings indicates that her demonstrated need, as determined by the district court, is diminished. Because Husband's briefing indicates his intention to file a motion to modify the spousal support award in district court, we will not address this argument further and instead presume Husband intends to file his motion stated to us. *See* § 40-4-7(B)(2)(a) (explaining that the district court may modify any order awarding spousal support "whenever the circumstances render such change proper"); *Kuert v. Kuert*, 1956-NMSC-002, ¶ 18, 60 N.M. 432, 292 P.2d 115 (stating that upon the divorced husband's motion, the district court may abate spousal support payments to the divorced wife as of the date of her subsequent remarriage "unless she proves extraordinary conditions justifying continuance" of the original payments); *Mindlin v. Mindlin*, 1937-NMSC-012, ¶ 14, 41 N.M. 155, 66 P.2d 260 (explaining that "[t]he law seems to be well settled that the marriage of the wife does not of itself abate the [spousal support] due from her former husband," and that such relief must arise from a motion before the district court).

**{18}** Our review indicates that the district court properly considered the evidence on the record in accordance with the statutory requirements and that its decision regarding spousal support was consistent with the logical inferences of the facts and circumstances of the case. *See Clark*, 2014-NMCA-030, ¶ 8. Accordingly, we cannot, on the record before us, conclude that the district court abused its discretion in awarding spousal support.

## IV. The District Court Did Not Err in Dividing Husband's Military Retirement Benefits

**{19}** Husband argues the district court's order dividing military retirement benefits is erroneous because the district court failed to follow applicable law. Specifically, Husband claims that the district court failed to properly apply provisions of the National Defense Authorization Act (NDAA), affecting the division of military retirement benefits under the Uniformed Services Former Spouses' Protection Act (USFSPA), when dividing Husband's military retirement benefits. Because Husband's argument regarding the division of military retirement benefits presents a question of the district court's application of law to the facts, we review this issue de novo. *Paz v. Tijerina*, 2007-NMCA-109, ¶ 8, 142 N.M. 391, 165 P.3d 1167 ("[O]ur review of legal questions and the application of the law to the facts is conducted de novo." (internal quotation marks and citation omitted)).

**{20}** "[T]he USFSPA authorizes state courts to treat disposable retired pay as property of the military member and his spouse in accordance with the law of the jurisdiction of such court." *Scheidel v. Scheidel*, 2000-NMCA-059, ¶ 6, 129 N.M. 223, 4 P.3d 670 (alteration, omission, internal quotation marks, and citation omitted); 10 U.S.C. § 1408(c)(1) (2018). "Disposable retired pay is defined as the total monthly retired pay to which a member is entitled, less certain deductions." *Scheidel*, 2000-NMCA-059, ¶ 6 (alteration, internal quotation marks, and citation omitted); 10 U.S.C. § 1408(a)(4). On December 23, 2016, Congress passed the NDAA for Fiscal Year 2017. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 641, 130 Stat. 2000 (2017). In relevant part, passage of the NDAA amended certain provisions of the USFSPA, including 10 U.S.C. § 1408(a)(4)(B)(i), which provides:

> [I]n the case of a division of property as part of a final decree of divorce, dissolution, annulment, or legal separation that becomes final prior to the date of a member's retirement, the total monthly retired pay to which the member is entitled shall be . . . the amount of retired pay to which the member would have been entitled using the member's retired pay base and years of service *on the date of the decree of divorce*, dissolution, annulment, or legal separation, as computed under [S]ection . . . 1407.

(Emphasis added.) According to the Department of Defense Financial Management Regulations, the changes implemented by the NDAA apply to cases where the former spouse and member were *divorced after* December 23, 2016. Dep't of Def. Fin. Mgmt. Reg., DoD 7000.14-R, vol. 7B, ch. 29, para. 290801 (July 2019).

**{21}**     Husband contends that the NDAA amendments to the USFSPA apply in the present case because "the court did not enter final orders, including the order dividing military retirement, until 2018[,]" and therefore the amount of divided military retirement benefits awarded to Wife was erroneous. We are unpersuaded. Here, the date of divorce between the parties—which has never been challenged—was May 25, 2016. After careful review of Husband's citations to secondary sources and non-precedential opinions[2] from other jurisdictions to support his argument that the NDAA amendments to the USFSPA should apply to the parties' divorce, we disagree with Husband's position and conclude that because the NDAA applies to divorces *after* December 23, 2016, the NDAA's amendments to the USFSPA do not apply in this case where the parties were divorced as of May 25, 2016. Accordingly, we hold there was no error in the district court's division of military retirement benefits.

## V.     The District Court Did Not Err in Dividing the TSP

**{22}**     In conjunction with his argument regarding military retirement benefits, Husband also argues the district court erred in dividing the TSP from Husband's service in the military. Following the July hearing, the district court filed its order dividing the TSP, stating that the order "creates and recognizes the existence of [Wife's] right to receive a portion of [Husband's] benefit payable under the [TSP] which is administered by the Federal Retirement Thrift Investment Board." The district court's order assigned to Wife fifty percent of Husband's total balance accumulated under the TSP during the parties' marriage. However, Husband later made clear that after parties' attorney fees were paid out of the TSP, the TSP's balance was zero and the order assigning fifty percent of the value to Wife was not satisfied. In response, the district court directed Husband to submit within thirty days a detailed accounting proving how the TSP funds—estimated at over $40,000—were spent.

---

2Husband cites *Fulgium v. Fulgium*, 203 A.3d 33, 40 (Md. Ct. Spec. App. 2019) for the proposition that the NDAA amendments to the USFSPA were "intended to modify the division of military retired pay in a divorce decree to the amount the member would be entitled based upon the member's pay grade and years of service *at the time of the divorce rather than at the time of retirement*." (Emphasis added) (internal quotation marks and citation omitted). Husband also cites *Sample v. Sample*, 2018 WL 4203545, at *3 (Tenn. Ct. App. Sept. 4, 2018), for general background information regarding the NDAA and its effect on the division of military benefits. Consistent with *Fulgium*, Sample reiterates the proposition that "[t]he amount of retired pay is limited to that which the member would have been entitled using the member's retired pay base and years of service *on the date of the final decree of divorce*, dissolution, annulment, or legal separation." *Sample*, 2018 WL 4203545, at *4 (emphasis added) (internal quotation marks and citation omitted). Indeed, both cases set forth the USFSPA's requirement that the date of divorce must be used to calculate the amount of retired pay. Here, it is uncontested that the district court relied on the date of divorce when dividing Husband's military retirement benefits. It appears that Husband's primary argument regarding the NDAA's amendment of the USFSPA centers not on a contention that the district court used the wrong date in dividing military retirement benefits, but rather that the district court's order failed to include findings—which would be required by the NDAA amendments, if applicable—within its order, and, thus, the order was erroneous. Our review of the secondary sources and non-precedential opinions cited by Husband, along with the record in this case, makes clear that even if such findings were included within the district court's order dividing military benefits in conformance to the NDAA amendments, the resulting division of Husband's military benefits would remain as ordered by the district court because the date of divorce would be relied upon in either analysis as mandated by the USFSPA, the NDAA amendments, and Husband's cited sources.

**{23}** Based on our own thorough review of the record, it is unclear whether Husband submitted the accounting as requested by the court, and Husband provides no citation to the record from which we could determine how the TSP funds were spent. Without such accounting information, we cannot know whether the TSP funds were withdrawn for justifiable reasons. Nevertheless, Husband now makes the argument—unsupported by either cited authority or citations to the record proper—that the district court erred in dividing the TSP because "[t]he district court should have treated the former value of the TSP as a community debt, rather than awarding Wife one[-]half of the former value." We consider this assertion to be undeveloped and unsupported by citations to either authority or the record proper and, thus, we do not address it further. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."); *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)); *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (citation omitted)). Moreover, "[w]hen there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Talley v. Talley*, 1993-NMCA-003, ¶ 12, 115 N.M. 89, 847 P.2d 323. Here, even assuming, without deciding, that an accounting from Husband could prove the TSP value was justifiably depleted through payment of both parties' attorney fees, there would remain reasons and evidence in support of the district court's decision. Accordingly, on the record before us, we are presented no basis upon which we might conclude the district court abused its discretion in dividing the TSP.

## VI.    The District Court Did Not Err in Awarding Attorney Fees

**{24}** Husband's final argument on appeal is that the district court erred in awarding attorney fees to Wife because (1) Wife failed to file a motion seeking fees, (2) the district court failed to enter findings of fact and conclusions of law supporting its award of attorney fees, and (3) the district court's award of attorney fees was based solely on disparity of income between the parties. "The decision whether to grant or deny a request for attorney fees rests within the sound discretion of the district court." *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 15, 134 N.M. 776, 82 P.3d 947. Thus, we review the district court's decision awarding attorney fees for an abuse of discretion. *Id.*

**{25}** Here, the district court awarded attorney fees to Wife under Section 40-4-7(A), which provides in part that "[t]he court may make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case." We have held that Section 40-4-7(A) supports a district court's award of attorney fees, recognizing "that the central purpose of an award of attorney fees under Section 40-4-7(A) is to remedy any financial disparity between the divorcing parties so that each may make an efficient and effective presentation of his or her claims in the

underlying divorce case." *Garcia*, 2004-NMCA-004, ¶ 19. Further, the "primary test" to determine whether such an award is warranted is "a showing of economic disparity, the need of one party, and the ability of the other to pay[.]" *Quintana v. Eddins*, 2002-NMCA-008, ¶ 33, 131 N.M. 435, 38 P.3d 203 (internal quotation marks and citation omitted).

**{26}** Regarding Husband's first argument—that Wife never filed a motion seeking attorney fees—we point to Wife's motion for relief from judgment, filed on June 7, 2016, in which she moved for attorney fees. Similarly, regarding Husband's second argument that the district court failed to enter findings of fact and conclusions of law supporting its award of attorney fees, we note that the district court's findings of fact and conclusions of law and final order, filed on March 28, 2017, includes—per its title—both findings of fact and conclusions of law regarding the parties' disparity of income and the district court's reliance on such in awarding attorney fees. The district court's order also specified that Husband would have fifteen days in which "to respond as to the reasonableness and necessity of attorney[] fees and costs." Husband did not file his motion opposing attorney fees until April 27, 2017, thirty days after the district court's order.

**{27}** Finally, Husband argues that the district court's award of attorney fees constitutes an abuse of discretion because the district court based its award "on disparity of income alone without considering other relevant factors." Husband cites to *Gomez v. Gomez* for the proposition that when awarding attorney fees, a court should consider not only the economic disparity of the parties—the "most important" factor—but also "the nature of the proceedings, the complexity of the issues, the relief sought and recovered, the ability of the parties' attorneys and the ability of the parties to pay." 1995-NMCA-049, ¶ 12, 119 N.M. 755, 895 P.2d 277 (internal quotation marks and citation omitted), *superseded by statute on other grounds as stated in Erickson*, 1999-NMCA-056, ¶ 25. Here, we conclude that the district court sufficiently considered other factors beyond the disparity of income between the parties. Regarding the nature of the proceedings and the complexity of the issues, the district court characterized the case as "a nightmare" during the July hearing, citing the long timeline of ongoing litigation between the parties, and stating that the case presented "the most awkward unfolding . . . of evidence." Similarly, at the October hearing, the district court noted the "awkward" and convoluted nature of the case's procedural history, stating that in the years of litigation between the parties, the court had "pulled out all of the bells and whistles." We disagree with Husband's implication that *all* the *Gomez* factors must be considered and documented in findings of fact and conclusions of law by the district court. As the court noted, economic disparity is listed as the "most important" factor, and our review of the record reveals that the district court adequately weighed and considered factors beyond economic disparity to satisfy the boundaries contemplated by our case law. Accordingly, we hold that the district court did not err in awarding attorney fees.

**CONCLUSION**

**{28}** For these reasons, we affirm.

**{29}** IT IS SO ORDERED.

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**