2004-NMCA-004

82 P.3d 947

**Fidel GARCIA, Intervenor–Appellant,**

v.

**Mario JEANTETTE, Petitioner–Appellee.**

No. 22,784.

Court of Appeals of New Mexico.

Sept. 23, 2003.

Samuel M. Herrera, The Herrera Firm, P.C., Taos, NM, for Appellant.

Brigitte Ursula Lotze, Jerry J. Hamilton, Brigitte Lotze Law Firm, ·Taos, NM, for Appellee.

## OPINION

WECHSLER, Chief Judge.

{1} We address in this appeal whether the district court had authority under NMSA 1978, § 40–4–7(A) (1997), to order an intervening third party to pay attorney fees incurred by a divorcing party who was required to bring a separate action to collect on a judgment entered in the divorce proceeding. We hold that Section 40–4–7 does not authorize an award of attorney fees under these circumstances. We also decline to uphold the district court's judgment as an award of sanctions against the third party under its inherent authority. We therefore reverse the award of attorney fees.

### Background

{2} During their marriage, Petitioner Susan Rita Jeantette (Wife) and Respondent Mario Jeantette (Husband) owned a house in Taos, New Mexico, on land historically be-

longing to Wife's family. Wife's parents, Fidel and Eva Garcia, had given the land to Husband and Wife as a gift. The property was part of the family compound on which Fidel and other relatives lived. When Husband and Wife built their house on the property, they obtained mortgage loans from First State Bank and Peoples Bank to finance the construction. Fidel assisted in building the house and also co-signed the mortgage in favor of First State Bank. On March 21, 1994, after ten years of marriage, Wife filed for divorce from Husband in Taos County District Court. While the divorce proceeding was pending, Husband and Wife defaulted on their mortgage payments to First State Bank and Peoples Bank. Consequently, on February 8, 1995, First State Bank filed a foreclosure action against Husband, Wife, and Fidel in Taos County District Court. Peoples Bank later joined the action and filed a cross-complaint against Husband and Wife to foreclose on the mortgage it held against the property.

{3} On July 5, 1995, First State Bank obtained judgments of foreclosure against Husband, Wife, and Fidel. Meanwhile, neighbors made an offer to purchase the subject property for $115,000, and the district court ordered a sale of the property to avoid a foreclosure sale. However, before this sale could be consummated, Fidel, apparently in an effort to thwart the sale and keep the property, purchased the judgments in favor of First State Bank and the note and mortgage held by Peoples Bank, thereby terminating the banks' interests in the foreclosure action. On August 23, 1995, the district court entered an order consolidating the foreclosure action with the domestic relations action, thus allowing Fidel to intervene in the divorce proceeding as a third-party respondent.

{4} On December 16, 1996, after two-and-a-half years of bitter litigation over the subject property and other issues, the district court entered a final judgment, decree and order, dissolving the marriage, dividing the community assets and debts, determining the custody and support of the two minor children, and ordering Husband and Wife to seek counseling for anger management, domestic violence, and parenting. The district court also determined the parties' rights and interests in the foreclosed property. It awarded ownership of the residence to Fidel and Wife, but ordered them to pay Husband his community share of the equity in the property. In reaching this decision, the district court found that Fidel and Wife had willfully evaded its order that the property be sold by blocking access to the property, harassing potential buyers, and otherwise making it difficult to show the house. It also found that Fidel "engaged in his own manipulations" to keep the house within the family, rescue his daughter from debt, and leave Husband "penniless." Finally, it found that Fidel's actions in the foreclosure proceeding were designed to divest Husband of his interest in the equity in the house.

{5} Consequently, the district court imposed a judgment lien on the subject property for $23,600, the net value of Husband's equity interest in the property. It also imposed other judgment liens on the property for rent and Wife's share of community debts. On October 21, 1997, after further proceedings to clarify and correct its findings, the district court entered an order modifying the final judgment, decree and order. Fidel sought to appeal the district court's division of the foreclosed property, but this Court, in a memorandum opinion, declined to reach the foreclosure issues on the ground that they were not timely appealed.

{6} On December 29, 1999, Husband filed a separate action against Wife and Fidel in Taos County District Court to foreclose on the judgment liens entered in the divorce case. On October 27, 2000, the district court granted partial summary judgment in favor of Husband on his claims against Wife and Fidel for his share of the equity in the house and against Wife for a hospital debt. Husband withdrew his rental value claim and the district court denied his other claims. To avoid a foreclosure sale of the property, Fidel elected to pay the judgment in favor of Husband for his share of the equity in the house and the hospital debt.

{7} In collecting on the judgments from the divorce action, Husband incurred attorney fees of $9553.31, which were to be paid to

his attorney under a contingency fee agreement. Although Husband waived his request for attorney fees in the foreclosure action, he later filed a motion in the divorce action seeking to recover his attorney fees incurred in the foreclosure action pursuant to Section 40–4–7(A).

{8} Fidel did not timely respond to Husband's motion for attorney fees. Although he was granted several extensions of time within which to respond to the motion, he did not file a response until June 29, 2001, fourteen days after the last extension deadline had expired. Thus, on June 26, 2001, the district court entered a judgment for attorney fees in favor of Husband pursuant to Rule 1–007.1 NMRA 2003. The judgment held Fidel and Wife "jointly and severally" liable for Husband's attorney fees in the amount of $9553.31 plus post-judgment interest.

{9} On August 2, 2001, Fidel filed a motion to set aside the judgment for attorney fees on the ground that he did not receive proper notice of the entry of the judgment under Rule 1–055 NMRA 2003. Following a hearing, the district court entered an order refusing to set aside the judgment for attorney fees. Fidel appeals from the denial of the motion to set aside the judgment, attacking the underlying award of attorney fees against him. Wife does not contest the judgment for attorney fees or the denial of the motion to set aside the judgment; she is not a party to this appeal.

*Preservation*

■ {10} Fidel argues that the district court erred in awarding attorney fees against him because Section 40–4–7(A) does not provide a basis for awarding fees against an intervening third party who is not a party to the divorce. Husband, however, contends that Fidel waived this argument by filing an untimely response to the motion for attorney fees and by not further challenging the district court's authority to award fees against him in his motion to set aside the judgment or at the hearing on the motion to set aside.

{11} Fidel's response to the motion of attorney fees specifically challenged the authority of the district court to award attorney fees against Fidel under Section 40–4–7, asserting that Husband's reliance on the domestic relations statute "perverts the purpose" of the statute. However, as Husband contends, the response was not timely filed. Because the response was not timely filed, the district court entered a judgment for attorney fees against Fidel pursuant to Rule 1–007.1. Fidel later moved to set aside the judgment, arguing that he was not given proper notice of the entry of the judgment under Rule 1–055.

{12} Our review of the transcript of the hearing on the motion to set aside the judgment indicates that at the hearing, the district court allowed the attorneys for the parties to fully reargue the grounds for, and the defenses to, the motion for attorney fees. Besides arguing that the judgment was entered without notice to him, Fidel argued that "the domestic statute" should not apply to him and that the issue of fees should have been litigated in the foreclosure action, not the divorce action. He further argued that Husband "waived attorney fees" by declining to request them in the foreclosure action. Finally, he argued that Husband was not entitled to attorney fees on the basis of equity. In response, Husband's counsel reargued the grounds of his motion, recounting the procedural history of the case. After questioning counsel during their respective arguments, the district court ruled on the merits of the motion for attorney fees, determining that fees were justified on the ground that the foreclosure action arose from issues in the divorce action.

■ {13} Although a reviewing court generally will not review a claim of error unless the appellant timely objected below, it will do so when the trial court addressed the untimely objection on the merits. *See State v. Diaz,* 100 N.M. 210, 212, 668 P.2d 326, 328 (Ct.App. 1983). In this case, when the district court considered the arguments in Fidel's untimely response, and Husband had an opportunity to respond to the arguments at the hearing on the motion to set aside the judgment. As a result, Fidel's arguments on appeal were properly preserved. *See DeFillippo v. Neil,* 2002–NMCA–085, ¶ 12, 132 N.M. 529, 51 P.3d

1183 (stating that the primary purposes of the preservation rule are to alert the trial court to the potential error so the court has an opportunity to avoid mistakes and to give opposing parties a fair opportunity to meet the objection); *Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct.App.1995) (stating that "the preservation requirement should be applied with its purposes in mind, and not in an unduly technical manner to avoid reaching issues that would otherwise result in reversal"); *cf. In re Estate of Keeney*, 121 N.M. 58, 60–61, 908 P.2d 751, 753–54 (Ct.App.1995) (holding that when the trial court proceeded to consider affidavits submitted with motion to reconsider summary judgment, the affidavits were properly before the appellate court for purposes of reviewing the propriety of the trial court's grant of summary judgment).

*Standard of Review*

{14} Ordinarily, when a party appeals from the denial of a motion to set aside a judgment, the scope of appellate review is limited to the correctness of the denial of the motion and does not extend to the judgment sought to be reopened. *See James v. Brumlop*, 94 N.M. 291, 294, 609 P.2d 1247, 1250 (Ct.App.1980). In this case, however, the district court, in refusing to set aside the judgment, ultimately addressed the merits of the underlying motion for attorney fees, ruling that Husband was entitled to an award of fees under Section 40–4–7(A). Under these circumstances, we will review the propriety of the district court's ruling on the question of attorney fees.

{15} The decision whether to grant or deny a request for attorney fees rests within the sound discretion of the district court. *See Quintana v. Eddins*, 2002–NMCA–008, ¶ 33, 131 N.M. 435, 38 P.3d 203. Thus, we review the district court's ruling on attorney fees only for an abuse of discretion. *Bustos v. Bustos*, 2000–NMCA–040, ¶ 24, 128 N.M. 842, 999 P.2d 1074. "An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the case." *Id.* Even when we review for an abuse of discretion, however, we review the application of the law to the

facts de novo. *N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450. Similarly, when called upon to consider questions of law, such as issues of statutory interpretation, we review these questions de novo. *Quintana*, 2002–NMCA–008, ¶ 9, 131 N.M. 435, 38 P.3d 203; *Pub. Serv. Co. v. Diamond D Constr. Co.*, 2001–NMCA–082, ¶ 48, 131 N.M. 100, 33 P.3d 651 ("Issues of statutory construction and interpretation are questions of law, which we review de novo.").

*Applicability of Section 40–4–7(A) to Support Attorney Fee Award Against Fidel*

{16} Generally, a party may recover attorney fees only when authorized by statute, court rule, or an agreement expressly providing for their recovery. *Monsanto v. Monsanto*, 119 N.M. 678, 681, 894 P.2d 1034, 1037 (Ct.App.1995). In this case, the district court awarded attorney fees to Husband pursuant to Section 40–4–7(A), which provides in part: "The court may make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case." The question presented by this appeal is whether the legislature, in enacting Section 40–4–7(A), intended to allow a divorcing party to recover from an intervening third party attorney fees incurred in a separate action to collect on a judgment lien imposed in the divorce action.

{17} "A statute should be interpreted to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 794, 568 P.2d 1236, 1240 (1977). If the meaning of the statute is plain, we give effect to the language as written and refrain from further statutory interpretation. *Sims v. Sims*, 1996–NMSC–078, ¶ 17, 122 N.M. 618, 930 P.2d 153. Thus, "we consider the language of the statute, the purpose of the legislation, and the wrongs it was intended to remedy." *Styka v. Styka*, 1999–NMCA–002, ¶ 21, 126 N.M. 515, 972 P.2d 16.

{18} According to the plain language of Section 40–4–7(A), the purpose of the provision allowing for attorney fees in domestic relations cases is to "ensure *either party* an

efficient preparation and presentation of his case." *Id.* (emphasis added). "Either party," as that term is used in Section 40–4–7(A), can logically only refer to the parties to the underlying domestic relations proceeding, that is, husband and wife. *Compare* NMSA 1978, § 40–4–1 (1973) (emphasis added) (providing that district court may decree dissolution of marriage upon petition of *"either party to a marriage"*); NMSA 1978, § 40–4–3 (1973) (emphasis added) (providing that when "the *husband and wife* have permanently separated and no longer live or cohabit together as husband and wife, *either* may institute proceedings" for a division of property or disposition of children or alimony); NMSA 1978, § 40–4–4 (1973) (emphasis added) (providing that proceeding for dissolution of marriage, division of property, or disposition of children or alimony may be brought in the county where *"either of the parties* resides"). Thus, a plain reading of Section 40–4–7(A), particularly when viewed in the context of similarly worded statutes related to the dissolution of marriage, supports the conclusion that the provision for award of attorney fees in domestic relations cases applies only to proceedings "for the dissolution of marriage, division of property, disposition of children or spousal support" involving *husband and wife.* Section 40–4–7(A); *see Meridian Oil, Inc. v. N.M. Taxation & Revenue Dep't,* 1996–NMCA–079, ¶ 12, 122 N.M. 131, 921 P.2d 327 (explaining that in ascertaining legislative intent, we begin by reading and examining the text of the statute and drawing inferences about the meaning from its composition and structure); *Herrera v. Sedillo,* 106 N.M. 206, 207, 740 P.2d 1190, 1191 (Ct.App.1987) ("Statutes which relate to the same class of things are in pari materia" and "should, as far as reasonably possible, be construed together as though they constitute one law.").

{19} We believe this interpretation of the statutory language to be consistent with the customary approach of New Mexico courts in determining whether to award attorney fees in divorce cases. Our case law recognizes that the central purpose of an award of attorney fees under Section 40–4–7(A) is to remedy any financial disparity between the divorcing parties so that each may make an efficient and effective presentation of his or her claims in the underlying divorce case. *Quintana,* 2002–NMCA–008, ¶ 33, 131 N.M. 435, 38 P.3d 203 ("In determining whether to award attorney fees, a showing of economic disparity, the need of one party, and the ability of the other to pay, has been characterized as the primary test in New Mexico.") (internal quotation marks and citation omitted); *see also Alverson v. Harris,* 1997–NMCA–024, ¶ 26, 123 N.M. 153, 935 P.2d 1165 ("The most important factor the trial court considers in deciding whether to award attorney fees is economic disparity between the parties.") (internal quotation marks and citation omitted); *Monsanto,* 119 N.M. at 681, 894 P.2d at 1037 (stating that "if economic disparity exists between the parties, such that one party may be inhibited from preparing or presenting a claim, the trial court should liberally exercise its discretion so as to remove that inhibition and assist the needy party"). In this case, an allowance of attorney fees against an intervening third party, particularly when incurred in a collateral proceeding to enforce a judgment, would do nothing to advance the statutory purpose of equalizing the economic resources between the divorcing parties.

{20} We acknowledge that divorce actions may sometimes include parties, other than husband and wife, who join in the action because they assert a right or interest in the subject of the dissolution proceedings. *See Greathouse v. Greathouse,* 64 N.M. 21, 23, 322 P.2d 1075, 1076 (1958) (recognizing that "either party to a divorce action may bring in third parties who claim an interest in the property alleged to be community, or third parties themselves may intervene and have their rights therein determined"); *Ruybalid v. Segura,* 107 N.M. 660, 663, 763 P.2d 369, 372 (Ct.App.1988) (involving attempt by husband's mother to intervene in divorce action based upon her interest in community property); *see also* NMSA 1978, § 40–9–2(A) (1999) (allowing district court to grant reasonable visitation privileges to grandparent who intervenes in dissolution proceeding). However, the statute authorizing the award of attorney fees in domestic relations cases, as it is currently written and interpreted by

our courts, appears to apply only to the parties to the underlying proceeding and does not extend to third-party litigants. *See* § 40–4–7(A).

{21} Husband argues that the district court, in awarding attorney fees against Fidel, could properly consider whether Fidel's actions caused Husband to incur attorney fees by requiring enforcement through litigation. He relies upon *Bustos*, 2000–NMCA–040, ¶ 26, 128 N.M. 842, 999 P.2d 1074 (recognizing that a party's actions that require enforcement through litigation is a factor to be considered in determining whether to award attorney fees under statute), and *Herrera v. Herrera*, 1999–NMCA–034, ¶ 20, 126 N.M. 705, 974 P.2d 675 (holding that wife was entitled to attorney fees when court enforced marital settlement agreement which husband refused to sign, thus requiring enforcement through litigation and causing wife to incur attorney fees which would otherwise not have been incurred). *Bustos* and *Herrera*, however, involve enforcement proceedings between husband and wife that occurred within the divorce action. In this case, Husband sought enforcement against his former father-in-law in a separate foreclosure action that was not part of the divorce action. Based on the language and purpose of Section 40–4–7(A), there is no statutory authority for an award of attorney fees against an intervening third party in a divorce case. The general rule that a party bears responsibility for his or her own attorney fees applies. Because Wife does not appeal the district court's award of attorney fees against her, we do not reach the more challenging question of whether, under Section 40–4–7(A), Husband is entitled to recover from Wife attorney fees that were incurred in the separate foreclosure proceeding.

*Availability of Sanctions as Alternative Basis for Attorney Fee Award*

{22} Husband further urges this Court to uphold the award of attorney fees against Fidel as sanctions for his bad faith litigation conduct during the divorce proceeding. Husband points to findings in the district court's final judgment entered on December 16, 2001 as substantial evidence in the record to support the imposition of sanctions. As discussed above, the findings relate to Fidel's and Wife's actions in obstructing the sale of the marital property and preventing Husband from taking his share of the equity in the property and were the basis of the district court's imposition of a judgment lien against the property.

{23} As Husband correctly notes, courts have inherent power to impose sanctions on both litigants and attorneys to regulate their docket, promote judicial efficiency, and deter frivolous filings. *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 120 N.M. 1, 4, 896 P.2d 1148, 1151 (1995); *Seipert v. Johnson*, 2003–NMCA–119, ¶ 11, 134 N.M. 394, 77 P.3d 298. "Although the district court's authority to impose sanctions does not extend to pre-litigation conduct, under its inherent power, the court may in appropriate cases impose attorney's fees as sanctions for bad faith, vexatious litigation, or acts in defiance of a court order, where such acts arise out of post-litigation conduct." *Martinez v. Martinez*, 1997–NMCA–096, ¶ 23, 123 N.M. 816, 945 P.2d 1034 (citation omitted).

{24} In this case, however, Husband did not request sanctions against Fidel in his motion for attorney fees. Instead, Husband predicates his motion solely on the district court's authority to award attorney fees in a domestic relations action pursuant to Section 40–4–7(A). The motion does not contain any allegations of bad faith litigation conduct on the part of Fidel. It alleges only the existence of the judgment liens imposed in the divorce action, the refusal of Wife and Fidel to pay the judgment liens, and the necessity of filing a separate foreclosure action to collect on the judgment liens. Although Husband attached a copy of the final judgment, decree and order to the motion for attorney fees, it appears to have been submitted only for the purpose of establishing the existence of the judgment liens against the property. These factual allegations, without more, do not support an award of sanctions against Fidel for attorney fees incurred in the separate foreclosure action. *Cf. Baca*, 120 N.M. at 7, 896 P.2d at 1154 (explaining that a court cannot award attorney fees as sanction for

"conduct that gave rise to the underlying cause of action"); *Martinez,* 1997–NMCA–096, ¶ 23, 123 N.M. 816, 945 P.2d 1034.

{25} Moreover, at the hearing on the motion to set aside the judgment, neither the parties nor the district court specifically discussed any of the findings concerning Fidel's alleged misconduct now being advanced by Husband. Rather, in determining whether to uphold the grant of attorney fees, the district court looked solely at whether the issues in the foreclosure action arose out of the divorce case. It did not examine the conduct of the parties leading up to the foreclosure action. Under these circumstances, we decline to construe the award of attorney fees as sanctions against Fidel. *See Tres Ladrones, Inc. v. Fitch,* 1999–NMCA–076, ¶ 13, 127 N.M. 437, 982 P.2d 488 (discussing that party generally may not be granted affirmative relief not requested in the pleadings).

{26} Husband additionally argues that this Court should affirm the district court's judgment if it is right for any reason. *See Meiboom v. Watson,* 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. An appellate court, however, will not affirm on an alternate ground not argued below if doing so would be unfair to the appellant. *Id.; McElhannon v. Ford,* 2003–NMCA–091, ¶ 14, 134 N.M. 124, 73 P.3d 827. It would be unfair to Fidel to affirm on a fact-dependent ground not raised either in the motion for attorney fees or at the hearing on the motion to set aside the judgment. *See Meiboom,* 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154. Moreover, we are not convinced that the district court would have awarded sanctions against Fidel based solely upon findings made by a different district judge in a different context several years earlier, particularly when it appears that certain of the judgment liens were disputed by Fidel, and Husband did not prevail on all his claims in the subsequent foreclosure action.

*CONCLUSION*

{27} We hold that, in a divorce case, Section 40–4–7(A) does not authorize an award of attorney fees against an intervening third party. We also decline to uphold the award of attorney fees against Fidel as sanctions against him. Accordingly, we reverse the district court's decision as to Fidel and remand for further proceedings consistent with this opinion.

{28} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.