This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**DYER-ROSSI, L.L.C.,**

      Plaintiff-Appellant/Cross-Appellee,

v.                              **NO.  29,429**

**CHERYL HALL,**

      Defendant-Appellee/Cross-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Karen L. Parsons, District Judge**

Adam D. Rafkin, P.C.
Adam D. Rafkin
Ruidoso, NM

for Appellant/Cross-Appellee

Richard A. Hawthorne, P.A.
Richard A. Hawthorne
Ruidoso, NM

for Appellee/Cross-Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

Following the termination of a contract for the sale of land, Dyer-Rossi, L.L.C. (Buyer) sued Cheryl Hall (Seller) for reimbursement of its earnest money. Both parties requested, but were denied, attorney's fees. Buyer appeals, maintaining that because it was the prevailing party, it is entitled to attorney's fees. Seller cross-appeals, asserting error in the district court's determination that she breached the contract. For the reasons below, we affirm the district court.

## I. BACKGROUND

Buyer and Seller signed a Purchase Agreement (Agreement) for a parcel of land. Buyer provided Seller with $25,000 that was contractually described as "Earnest Money" which was refundable if the contract terminated. Yet, the earnest money was referred to as a "non[-]refundable deposit" in Addendum No. 1 (Addendum) executed by the parties on the same day. The closing date was set six months to the day after the contract was signed. The Addendum further obligated "[Buyer] to pay Seller" an additional "$1,000[] per month for a period of [six] months." The Agreement stated that the earnest money would be escrowed and "applied to Purchase Price and/or closing costs upon Funding Date." The Agreement also stated that "Seller will not receive the proceeds of sale until all the events stated under 'Funding Date' have been completed." The final page of the Agreement listed the same broker as representing both Seller and Buyer.

The deal subsequently fell apart as described below. Buyer sued Seller to return $27,000, representing the earnest money and two monthly payments that had been tendered to Seller. From the district court's findings, Buyer tendered $25,000 and two $1,000 payments to the escrow agent with instructions to pay the money to Seller. Meanwhile, Buyer had requested a zoning change for the property that was turned down. At that time, Buyer considered asking for recission or reformation of the contract. Subsequently, Buyer tendered another $1,000 as required by the Addendum, but instructed the escrow agent not to give it to Seller.

When the payment did not come as expected, Seller contacted the broker on the transaction, who told Seller that she would "take care of it." The broker was aware, but did not communicate to Seller, that the check had been tendered to and was being held by the escrow agent. The broker contacted an attorney, who wrote a letter to Buyer, stating that he represented the broker and her agency, and Seller considered the contract terminated. Seller saw the letter and never contradicted its contents. The following month, Buyer tendered another $1,000 to the escrow agent, again instructing that it be held and not tendered to Seller. Seller did not ever contact Buyer or the escrow agent to ascertain the status of the payments. Acting on the advice of the broker and the broker's lawyer, Seller locked the gate to the property. Buyer thereafter sent a letter by his own attorney advising the broker's attorney that Buyer

was entitled to reformation or recission of the contract as a result of a mutual mistake. month later, Seller retained her own attorney, who advised Buyer that Seller was declaring the contract terminated due to Buyer's breach and repudiation. Seller eventually sold the property to another buyer.

The district court found that Seller terminated the contract by way of the broker's attorney's letter. The court also determined that Seller had at the time erroneously believed that Buyer never tendered the payments and had Seller known that payments were tendered, she would not have sought to terminate the contract. The court found a "technical breach" to have resulted from Seller's actions, even though Seller subjectively believed the letters sent to Buyer "simply demanded payment," and she did not know two payments were sitting at the escrow agent's office. In addition, none of the correspondence between the broker's lawyer and Buyer's lawyer had been sent to the escrow agent. Neither Seller, nor anyone acting on her behalf, ever demanded Buyer to cure the lack of payment.

Following a bench trial, the district court concluded that Seller's termination of the Agreement constituted enough of a breach of the contract to allow recovery of a "non-refundable deposit." The court awarded Buyer $27,000. In addition, it determined that awarding attorney's fees would be inequitable.

4

The district court enunciated three reasons for denying attorney's fees. First, the district court found that the most egregious claims against Seller were claims for misrepresentation, which had been dismissed by Buyer on the first day of trial. The only claim remaining against Seller was for return of the money Buyer had paid. The district court held that Buyer was entitled to the return of its $27,000 and declared that the Agreement was rescinded. The district court concluded specifically that Buyer had prevailed on its claim for recovery of its payments, but had not prevailed on its claims for reformation, recission, or misrepresentation by Seller. Because Buyer abandoned these claims on the first day of trial after Seller prepared her defense for such claims, the district court found that it would be inequitable to award attorney's fees.

Second, the court determined that the contract was ambiguous as to whether the $25,000 was a non-refundable deposit or earnest money and whether the monthly $1,000 payments were to be escrowed or paid directly to Seller. But for the ambiguity of payment terms and the failure of the broker to provide Seller with complete information, Seller would not have terminated the contract had she been aware that payments had been made. Hence, the court found again that equity prevented the award to Buyer of attorney's fees.

Lastly, the district court determined that the contract language regarding the deposit and monthly payments was ambiguous. Because this language was at issue in determining whether there was a breach, the court decided that it would be inequitable to award attorney's fees on this basis as well.

Buyer now appeals the district court's refusal to award attorney's fees. Seller appeals the court's determination that Seller breached the contract and the court's award of $27,000 to Buyer.

## II.    DISCUSSION

A.    Attorney's Fees Were Properly Denied

We find no fault with the district court's employment of equitable principles in denying attorney's fees. "The decision whether to grant or deny a request for attorney fees rests within the sound discretion of the district court." *Garcia v. Jeantette*, 2004-NMCA-004, ¶ 15, 134 N.M. 776, 82 P.3d 947. Similarly, we review only for an abuse of discretion when a district court uses its equitable powers to provide an appropriate remedy. *United Props. Co. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶ 7, 134 N.M. 725, 82 P.3d 535; *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 24, 138 N.M. 477, 122 P.3d 844. "An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances of the

case." *Garcia*, 2004-NMCA-004, ¶ 15 (internal quotation marks and citation omitted).

Buyer argues that because it was the prevailing party and the contract at issue "explicitly provided for attorney's fees to be awarded to the prevailing party," it should have been awarded attorney's fees. We agree that the contract had a fee shifting provision and that Buyer prevailed in obtaining a $27,000 judgment against Seller for breach of contract. Nonetheless, the court did not abuse its discretion in denying attorney's fees to Buyer.

First, it appears to have been Buyer's intention to terminate the contract, even though Seller technically breached the contract first. Once Buyer learned that the government denied its petition to alter the parcel's zoning, Buyer ordered the escrow company to withhold the $1,000 monthly payments from Seller. The evidence demonstrated that it was Buyer's general intention to leave the contract when the zoning change was denied, as denial of the zoning petition was contemporaneous with its order to hold the checks. Nonetheless, Seller technically breached first due to a miscommunication by the broker about Buyer's failure to make payments. It would not be in the interest of equity to reward Buyer attorney's fees when Buyer's actions indicated that it wanted out of the contract and would potentially terminate it despite Seller's actions.

In addition, Buyer, without notice to Seller or the court, abandoned its two most egregious claims against Seller just before trial began. As such, Buyer compelled Seller to answer to and prepare for trial against these claims prior to Buyer abandoning them. Awarding attorney's fees to Buyer after it compelled Seller to expend the resources to answer abandoned claims would be inequitable.

Moreover, the contract was ambiguous as to whether the deposit was non-refundable or refundable earnest money and whether payments were to be held until closing or to be paid as due under the Addendum. Both Buyer and Seller had persuasive arguments for interpreting the Agreement and Addendum in different ways. As interpretation of this language was at issue in determining who breached first, and it is clear that neither party acted maliciously, it would be inequitable to punish one party by ordering it to pay the attorney's fees in this case.

Thus, in light of the technical breach occasioned by the lack of transparency on the part of the broker with no intent to breach on Seller's part, the fact that Buyer compelled Seller to superfluously expend resources on litigation, and the ambiguity of the terms of the contract that led to the breach, we hold that the refusal to award attorney's fees was equitable. The district court did not abuse its discretion in denying them.

**B.    Substantial Evidence Supports the District Court's Decision to Find for Buyer on the Breach of Contract Issue**

In her cross-appeal, Seller contends that substantial evidence does not support the district court's determination that Seller breached the contract. In reviewing Seller's challenge of the district court's conclusion, "the standard for review is whether the law correctly was applied to the facts, viewing them in a manner most favorable to the prevailing party, indulging all reasonable inferences in support of the court's decision, and disregarding all inferences or evidence to the contrary." *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.*, 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991).

We hold that the district court's conclusion that the breach of the contract occurred when the broker's attorney informed Buyer that the contract was terminated is supported by substantial evidence, and we affirm the district court's conclusion that Seller breached the contract. Despite evidence concerning Buyer's withholding checks from Seller, we do not reweigh the evidence, rather we determine that there is substantial evidence in the record to support the decision of the district court. *Regents of Univ. of Cal. v. N.M. Water Quality Control Comm'n*, 2004-NMCA-073, ¶ 29, 136 N.M. 45, 94 P.3d 788.

The evidence before us demonstrates that Seller (1) was aware of a problem regarding Buyer's payments, (2) failed to contact her escrow agent and inquire about the status of payments, (3) locked Buyer out of the property, and (4) proceeded to

terminate the contract through a letter from the broker's attorney. Seller was aware of the content of this letter, did not object to it, and did not claim that the attorney had no authority to write it on her behalf. Furthermore, the letter explicitly stated that the contract was terminated.

Thus, the district court's judgment was supported by substantial evidence, as there is ample support for the conclusion that Seller breached the contract through the termination letter. We therefore affirm the judgment of the district court.

**III.    CONCLUSION**

The district court used sound discretion in applying equitable principles to this case and in determining when and by whom the contract was breached. Consequently, we affirm the district court.

**IT IS SO ORDERED.**


_____
**RODERICK T. KENNEDY, Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**

_____

**LINDA M. VANZI, Judge**